Good morning, Your Honors, and may it please the Court, Christopher Conant before myself in this appeal. There are four issues I want to touch on with the Court before my time is up. I will reserve three minutes. The first issue, I think, at the heart of this appeal is the interplay between the Barton Doctrine, which we talked about this morning, and the rule from Kaplan and Williams. Kaplan's a Supreme Court case, Williams, a Ninth Circuit case. Kaplan and Williams stand for the proposition that a bankruptcy trustee does not have statutory authority under the Bankruptcy Code to receive a claim from a third party to pursue against another defendant. There was a separate Kaplan analysis in one of the other cases. Was it before or after? Separate Kaplan analysis? Yes. In one of the other cases, associated cases here, the same issue came up and there was a whole discussion of this Kaplan problem. You're correct, Your Honor. Was that before or after? It was concurrent. Well, was it before or after? It can't be concurrent. Was it before this complaint was filed or not? If I recall correctly, that Kaplan issue was not briefed in the BLX bankruptcy case is what you're referring to. I believe that briefing came subsequent to when I filed the motion to dismiss in this case. Okay. So it was after, not before. Correct, Your Honor. The court, it was heavily briefed in the BLX bankruptcy, but the court didn't address the issue because the court found, this court panel found that Mr. Blucheflatt appellate outstanding to appeal the BLX, the order confirming the BLX plan of reorganization. Okay. But you're representing to me that the bankruptcy court analysis in that case was after you filed it. I don't believe the bankruptcy court in the BLX bankruptcy addressed the Kaplan issue. Someone did. Okay. Go ahead. It was raised on appeal. I believe it was raised on appeal to Judge Haddon. It was briefed to Judge Haddon. Judge Haddon dismissed the BLX bankruptcy appeal on, for lack of appellate standing as did this court. So I don't think we've had a decision on that issue. If my memory serves, I believe that the Kaplan issue in this case, what I would call the note case, was briefed prior to it being briefed in the BLX appeal. I raised on behalf of Mr. Blucheflatt the Kaplan and Williams issue in connection with the 12B1 motion to dismiss that I filed on behalf of Mr. Blucheflatt in the note case. The argument was is that Mr. Kirshner, the YCLT, had received an assignment of a claim from the BLX bankruptcy estate. Mr. Kirshner then, with that assignment, sued in his capacity as a Yellowstone Club trustee, post-confirmation liquidating trustee, in the note case to collect on the BLX notes against Mr. Blucheflatt. I argued that Kaplan and Williams applied because Mr. Kirshner, as the YCLT, was holding himself out as a bankruptcy trustee for the Yellowstone Club estate. And under the Williams and Kaplan line of cases, he didn't have standing to pursue that cause of action. The district court judge disagreed with me. The liquidating trust, in response to that motion to dismiss, said that I fundamentally mischaracterized the capacity in which the YCLT was suing Mr. Blucheflatt. The YCLT said, more or less, that we're just a creditor. But he didn't say it was because he wasn't a trustee. I'm sorry? He didn't say because he wasn't a trustee. He said that was an implication, Your Honor, that was, as I read it, the legal implication, the necessary implication of the position he took. The position I took was he's a bankruptcy trustee with an assignment from a third party. He can't sue. He said, essentially, it isn't an assignment from a third party creditor. He's not suing on behalf of a third party creditor to collect a debt. He is suing because the YCLT, or whatever it's called, was a creditor of BLX and, in that capacity, has an interest in collecting this money for itself. Certainly had an interest in collecting that money. That's what it said. He didn't say because he's not wearing his trustee hat. He's a person. He's suing in his personal capacity. How could he possibly be suing in his personal capacity? Your Honor, the personal capacity issue was, frankly, as soon as that defect was brought to my attention by the YCLT, I offered to amend the complaint to fix that issue. The YCLT opposed my proposed amendment. I still don't understand why you would only respond when it was brought to, why you only recognized the issue when it was brought to your attention. The issue was brought, I'm sorry, Your Honor. By YCLT, by the trust. Mr. Kirshner in his personal capacity. You mean Mr. Yes, yes. I don't, I don't, I just don't, the complaint was brought in his capacity as trustee. Correct. Under Rule 13, your counterclaim should have been directed to him in his capacity. You're absolutely correct, Your Honor. It was a mistake. It was a mistake to sue him in his personal capacity. But your explanation of why you did that just makes no sense to me. I just, I can't, I'm having a hard time following you. In, well, number one, Your Honor, it was a mistake to sue him in his personal capacity. Number two, it was the, this intersection of if, as I understood the argument, he was saying, I'm suing not as a bankruptcy trustee, I'm suing as a creditor. So where did that leave me with 14 days to decide? I should have. He was suing as a trustee. He was suing it. He wasn't. I'm sorry. He was suing as, in reality, he was suing as, I believe, ultimately. As a personal creditor? He certainly wasn't a personal creditor. I understand that, Your Honor. Your Honor, Your Honor, I understand that. He was not suing as a, as personally. I should have sued him as trustee of the Yellow Cross. If he was a creditor, he was, he was not a creditor. He was a trustee for, for a creditor. I understand that, Your Honor. But he was still a trustee. I understand that, Your Honor. I should, as I'm saying. So he's still with the Barton problem. And you always had the Barton problem. Well, that's a separate issue. That. No, it's not a separate issue. It's because he was never not a trustee that you have the problem. In what, trustee, a bankruptcy trustee? Yes. The, when Judge Feist, the district court judge, ruled that I fundamentally mischaracterized the capacity in which he was suing it. And which I argued in my 12B1 motion, which was in capacity as a bankruptcy trustee. YCLT says I fundamentally mischaracterized how I understood he was suing Mr. Blisseth in the note case. The legal implication of that ruling and the district court judge agreeing with the YCLT was that he was not suing as a bankruptcy trustee. He must have been suing in some other capacity. Clearly, it was capacity as a trustee, as a state law trustee created by the plan of reorganization, the trust agreement. So that's how, frankly, when I amended the complaint, proposed to amend the complaint, and did file an amended complaint, it was with respect to his capacity as a state law trustee. But you have this intersection between the implication of the district court judge rejecting the concept that Mr. Kirshner, the YCLT, was suing as a bankruptcy trustee meant that for whatever counterclaim it was, he couldn't also have it, again, throw up the shield of, well, now I'm a bankruptcy trustee for Barton Protection purposes. And that was the conundrum I was in, frankly. And that's why the counterclaim was asserted without seeking leave of court, which was, frankly, would have been challenging, if not downright impossible, to seek leave from the bankruptcy court in Montana within the 14 days which I had under Rule 12 to file any compulsory counterclaims. I have a minute and 45 seconds left I want to reserve. You couldn't get extra time? I'm not taunting you. I just don't know. Some deadlines are not extendable. You're not arguing that you couldn't have? I could have certainly sought extra time in the no case to file counterclaims. I had sought one or two other extensions prior to that. They were not well received. So I was reluctant to do so. What was not well received? An extension of time. An extension of time, I think, believed to file. Well, but I mean, I don't want to argue with you. But surely, if you're required to go get leave of another court as a condition for doing this, I can't imagine Judge Feist would have said no. He can't have 30 or 60 more days to do that. I could have asked, Your Honor. I guess my perspective on it was the implication of losing on my 1201 motion to dismiss. Judge Feist rejecting the idea that the YCLT was not precluded under the Kaplan-William line of cases. The implication of that was he wasn't a bankruptcy trustee. He wasn't a bankruptcy trustee and therefore not subject to the Barton Doctrine. That was the theory. Misguided as wrong, according to Judge Feist, as it ultimately was, that was the theory. And so that was why it was done the way it was done. I have 10 seconds. I would like to reserve those 10 seconds. Thank you. Kevin Barrett, again, for the trustee. We have to put this into context and we can't lose sight of the context. This was a $9 billion counterclaim. $6 billion. It looks ridiculous, but that is not the basis on which the sanctions were issued. That's correct, Your Honor, but it provides the context. It was against a litigation trustee who was appointed pursuant to a Chapter 11 plan. He was only doing his job, as he was required to do, to collect on the notes. Mr. Conant and Mr. Blixith are alleging the very same conspiracy theories that they had already alleged in Montana and that had already been rejected, at least in part. And this was really a continuation of that very same conduct. And for Mr. Conant to say that he is being impugned with guilt by association is just not correct. He was counsel of record in Montana. He was intimately involved in everything that was going on in Montana. So when you add in the fact that this really was not even the first pleading, the initial There's clearly a basis on which to impose sanctions under either 1927 or the Court's inherent powers. Mr. Blixith filed a motion to dismiss in response to the complaint, which he is entitled to do under the federal rules. That was his initial pleading. When that was denied, and that was the Kaplan pleading, when that was denied, he turns around and he asserts accountability. That is sanctionable under 1927. And I think the Keegan case makes that clear. We're not really talking about whether a document is Why do we need to worry about 1927, which is at least highly debatable, it seems to me. I don't agree that it's highly debatable. I think that it is multiplicitous and so on. Why don't you just accept the premise that it's highly debatable and answer the question. Okay. Thank you. Yes, I will. Um, I agree with you. It doesn't. Yeah, but you must be arguing for some reason. Is there some difference that matters between the inherent sanctions? There really isn't. Because in this context, I mean, it would have to be bad faith. So what difference does it make? There really isn't any real distinction. And he's certainly spent a lot of time going on about it. And I think that was in response to the claims in Mr. Conant's initial brief about 1927. But I agree with you. Fundamentally, it doesn't matter because the standards are basically the same or very similar at number one. And number two, the bankruptcy, I'm sorry, the district court judge in this case, clearly made the findings of fact. Except 1927 has an additional requirement that you multiply proceedings. Correct. And so we have the question of whether or not filing a counterclaim is a multiplication proceeding or is a new proceeding, right? Correct. Which has not been answered. It has not been answered. So why is that alone a reason for doubt? I mean, I'm not going to the premise that you were arguing with Judge Berzin about. You say, oh, it doesn't mean it's all the same. No, I mean, there's an issue there, right? There is an issue. There clearly is an issue. And I think it's an interesting issue. A counterclaim is essentially starting of a new... A counterclaim is something that could stand alone as a complaint if there weren't this lawsuit, right? Correct. So... And 1927 doesn't apply to complaints. Correct. It applies... This court has held that it applies to initial pleadings. And I don't think that you can just define a counterclaim... So as I understand it, the finding of frivolousness here was based on three legs on this. There was three legs on the stool. There was the Barton issue. There was the frivolousness issue, right? Correct. And there was a third, which we were just talking about. Rule 13? I'm sorry? Rule 13? No. Three legs? Well, anyway, let's talk about the Barton issue, right? I don't think there is an issue under Barton. Well, you also didn't think that 1927 was in doubt. And I managed to show you that maybe it is. So why don't you just assume that there is some issue in Barton? If you don't want to talk to it, that's fine. You don't have to... Perfectly prepared to talk to it. Here you have a litigation trustee, a liquidating trustee, appointed pursuant to a confirmed Chapter 11 plan. Crown Vantage is controlling. It's clear. What I think, Mr. Coney... Is a litigation trustee the kind of officers covered by Barton? Yes. Crown Vantage holds that. This court's Crown Vantage decision holds that a litigation trustee, liquidating trustee, is covered by Barton. So under that theory, they had to go get leave. Correct. Now, why isn't that anything more than just a defect? Like failing to exhaust administrative remedies, bringing a review without exhausting administrative remedies. We don't usually sanction people for... I mean, let's say somebody brings an FTCA claim, Federal Tort Claims Act claim, and they forget or they neglect to go and ask the agency for relief. I don't know if you have any familiarity with that. Just take my word for it. If you don't do that, you get dismissed for lack of jurisdiction. We don't have jurisdiction to hear... We can't obtain an FTCA claim. There's no exhaustion of administrative remedies. We don't usually sanction people for failing to go get... Seek administrative relief. Why is this sanctioned? Why is the fact that he should have gone and sought leave and didn't get leave? Why is that a sanctionable... Why isn't that more than mere error or oversight or a mistake or defect? Well, and I think this is why the context is so critical. You have to put it into context. So I ask one question and you want to answer a different question. But I don't want to look at context. I want to look at this specific issue alone. But if you say standing alone, that's not, that's fine. Let's just go ahead and discuss something else. But I don't want you to muddy up the waters by bringing in other things. Let's talk about the question that I asked. Why isn't the failure to seek leave of the bankruptcy court merely a defect? Why is that sanctionable conduct? Or is it? Is it? Let's say there was nothing else. Let's say that's the only thing that there was there. Would that be enough? The only thing being that he brought a claim that was not in accordance with Barton. Exactly. I don't know that it would. I mean, clearly, I think it's debatable in this context because here, not, what was it, before the court had, in Montana, had dismissed the complaint based upon the Barton doctrine. It's impossible for them to claim. But the real problem was that he was suing this guy in his personal capacity, which made no sense. It was, correct. But that's not what the district court sanctioned him for. I mean, he didn't sanction him for bringing a frivolous and stupid lawsuit against a person who was a trustee as if he wasn't a trustee. Correct. He sanctioned him for, among other things in the whole list of things, blatant disregard for the rules. And he specifically cited to both Rule 13 and the Barton doctrine. But blatant disregard for those two rules of law. And that's what he was sanctioned for, along with the bad faith. But the Barton problem was fixable, right? I mean, I... Ending alone, I think you're right. It would be fixable. And certainly, if Mr. Conant had, which I don't think was really their intent, but if he had had, if they had filed the counterclaim and then immediately gone to Montana and sought the allegation, you had a meeting, right, on the central district, the complex central district rules dealing with sanctions. You had a meeting. And as I understand it, he offered to drop the claim of individual, suing him in the individual capacity, right? So that one, why doesn't that one drop out? Since he offered that, he immediately conceded that I was wrong and offered to do that. And the other one was flexible. So why aren't there those things, two things in the district court's order that don't make any sense or are not sufficient to support the sanctions? Well, I think you have to get into the mind of what Mr. Blixith and what was going on and whether or not the simple act of filing the case against his adversary in a purely personal capacity and in failing to go for Barton, whether or not those were acts, in and of themselves, acts of benefit. Was the sanctions issued after, I presume they were, after he didn't in fact seek Barton permission? I'm sorry, I didn't hear you. After he did not, in fact, did not seek the Barton permission. Correct. He did not seek Barton permission. So in other words, I mean, part of the reason it wasn't strictly procedural, perhaps it was you filed it without asking permission and when you could have asked for permission, you didn't ask for the permission, suggesting you never, you know, you never meant this, essentially. Never meant it. You were trying to get, you were not, you never intended to go forward with a lawsuit against the trustee, qua trustee, for which you needed permission. Because you could have gone and tried and gotten the permission, you never tried. Correct. And I agree. And that's why I think you have to look at what's going on here and what was happening here. He was filing a $9 billion lawsuit. And I agree, that's not really necessarily relevant. In other words, it may have been fixable, but he didn't try and fix it. Correct. But put into context, the very act of filing this claim against Mr. Kirshner was an act of bad faith and a blatant disregard for the rules. But because they did not care, they wanted to intimidate Mr. Kirshner. They wanted to harass Mr. Kirshner by filing a $9 billion lawsuit against him. And frankly, it worked. And Mr. Kirshner resigned and was replaced. That's problematic here. Okay. Thank you. Thank you. You have a few seconds left. We'll give you a minute. Thank you, Your Honor. A couple points in reply. Number one, Mr. Barrett made reference to, they thought, in reference to Mr. Blix's legal team, trying to harass and intimidate Mr. Kirshner. When you look at the record in this case, the only thing beyond the filing of the counterclaim, the only thing relative to me that would be indicative of, I don't know what it's indicative of, but the only other evidence that they submitted was through the rubric of judicial notice of an email I sent to a different party in different litigation. That is the only other evidence that they tried to bring in with respect to me. And I don't believe that's sufficient. There's no nexus between the email that they pulled from a case docket in another case that I sent. What did the email say, by the way? It was an email between me and Mr. Kottner, who represented Richard Sampson, who's a Chapter 7 trustee in Montana, in a separate case. And it dealt with a number of other issues. They thought it, frankly, what they pointed it out for was, I made, Mr. Sampson made some comment to my client a while ago that he had some comment that Mr. Sampson was having some conversations with the judges. I don't want to get into any of that, but you asked what was in the email. And I simply asked Mr. Kottner to expand on that. That's the email. Well, it was separate, but it wasn't that separate. It was a separate, completely separate lawsuit. There's no finding of any nexus between that email and this case. And so that's why the inherent powers issues we were talking about, the 1927 issues aside, we still have the inherent powers issues. But you have to have some other evidence of bad faith. And I believe the only other evidence, beyond the filing of the counterclaim and the legal theories supporting it or not supporting it, was this email relative to me. Because the law is clear, you can't sanction an attorney for the conduct of his client or for the conduct of other parties. And so that is why I wanted to raise it, was because there's no other evidence. That's not competent evidence. This email that they brought in through judicial notice is not competent evidence of my evidence of bad character, for lack of a better term. So I wanted to touch on that in the context of motivations. The issue with Martin... Why $9 billion or $6 billion? I mean, that sort of bespeaks intimidation. It certainly... I can't disagree that it speaks intimidation. Did you just sort of lean on that keyboard and the two many zeros, you know, sort of... Add a bunch of zeros? It was under the RICO claim that was asserted. And there was a thought... There was a calculation that went into... Calculated Mr. Brooks's damages times a three for the RICO treble. And that's how you get there. It was also what was withdrawn... Offered to be withdrawn and was withdrawn in the attempted motion to amend the complaint, Your Honor. So... I thought part of the reason why there was not acceptance of your various offers is because you were not withdrawing with prejudice. You never offered to withdraw with prejudice. Mr. Glasser wanted to, in an email, I believe DR-86 and AR-92-93. He wanted to... He wanted a concession to drop the... In order to drop the sanction against me and Mr. Brooks, if he wanted a concession that all claims that Mr. Brooks would dismiss all claims with prejudice whatsoever. And any claim whatsoever. And I couldn't think of any... We didn't have any claims. At least not that I could formulate. But I felt as though it was inappropriate to require a concession of dismissal with prejudice. Certainly dismissed without prejudice. No intention of asserting them. But it frankly created a bit of a conflict. I felt it put me in a conflict where I had to, in order for me to get myself out of sanctions, advise my client to dismiss something that he may or may not have with prejudice. And so that's why that concession was not given. But we did seek to amend the complaint to remove the RICO claim to fix the Rule 13 issue, which, by the way, was not identified under the central district's local rules. You have to have a meet and confer. Identify the issues. In Mr. Glasser's initial meet and confer prior to filing a sanctions motion, he did identify some issues, but not this Rule 13 issue. And if it was brought to my attention, when it was brought to my attention, it was quickly attempted to be cured through the amended complaint. Okay. Thank you. Thank you. Okay. Mr. Sasaki, we'll stand for a minute.
judges: Kozinski, Paez, Berzon